ZELOTES W. HOLDEN *et al. vs.* SETH H. WELLS.

Testamentary gift of real and personal estate to the testator's daughter H. " to be and remain to her the said H., and to her heirs and assigns forever, providing that she dies leaving lineal heirs of her body. But in case that the said H. shall die leaving no child or children or descendants to take and hold said real and personal estate, then and in such case, I give, devise and bequeath said real and personal estate herein given to the said H. to my son T. and to my daughter F. equally between them and to their heirs and assigns forever."

H. intermarried with W. and died possessed of the real estate devised to her by the will, but left no child or descendant. A child born to H. and W. died in the lifetime of H. W. survived H.

*Held*, that as the words of limitation in the will, "leaving no lineal heirs of her body" and "in case that the said H. shall die leaving no child or children or descendants," manifested the testator's intention that the gift over should take effect only upon an indefinite failure of issue, the gift over was void as an executory devise, and that H. took an estate tail in the devised realty. *Wells v. Fairbanks*, 6 R. I. 474, distinguished.

*Held*, further, that W. was entitled to curtesy in the entailed estate.

TRESPASS AND EJECTMENT. Certified from the Common Pleas Division on an agreed statement of facts.

*February* 18, 1895. TILLINGHAST, J. This is an action of trespass and ejectment to recover possession of a certain tract of land with a dwelling house and other improvements thereon, situate in the town of Foster. It was brought in the Common Pleas Division in December, 1893, and subsequently certified to this Division on an agreed statement of facts, which, in so far as material to the questions raised, are as follows : —

1. That Thomas O. H. Carpenter late of the town of Foster died in the year 1839, seized and possessed in fee simple of the real estate described in the plaintiffs' declaration, and

leaving a last will and testament which was duly admitted to probate, the fourth clause of which is as follows, viz.: "Fourthly, I give, devise and bequeath to my daughter Henrietta Matilda Carpenter after the payment of my just debts, all the residue and remainder of my personal estate of any kind and nature whatsoever, together with all my real estate situated in the town of Foster and Coventry, excepting therefrom my Baker farm so called, and my lot lying Southerly from my Baker farm called the Morse lot, and for a particular description of the real estate hereby devised, and the boundaries and quantities of the same, reference being had to my deeds and conveyances thereof on record in the said town of Foster and Coventry, the same will fully appear, which said real and personal estate is to be and remain to her the said Henrietta Matilda Carpenter, and to her heirs and assigns forever, providing that she dies leaving lineal heirs of her body.  But in case that the said Henrietta Matilda shall die leaving no child or children or descendants to take and hold said real and personal estate, then and in such case, I give, devise and bequeath said real and personal estate herein given to the said Henrietta Matilda to my son Thomas O. H. Carpenter, Jr., and to my daughter Fanny H. Holden equally between them and to their heirs and assigns forever."

2.   That Henrietta Matilda Carpenter named in the said will was lawfully married to said defendant on the 23d day of June, 1853 ; that said Henrietta had one female child born of her body while so married to said defendant, on the 20th day of March, 1856 ; that said child died on the 28th day of March, 1861 ; that said Henrietta never had any other child or children or descendants ; that said Henrietta peaceably entered into possession of said real estate subject to the provisions of said will ; that said Henrietta died on the 8th day of August, 1892 ; that she was living on said premises with her said husband at the time of her decease, and that since her decease he has been and is now in possession of said estate.

3.   That Thomas O. H. Carpenter, Jr., named in the will of said Thomas O. H. Carpenter died intestate after his

father's death and in the lifetime of said Henrietta ; and that four of the plaintiffs, to wit, Helen C. Phillips, Amy W. Tanner, Loretta Phillips and Ella M. Blake are lineal descendants of said Thomas O. H. Carpenter, Jr., and his only heirs at law ; that Fanny H. Holden, named in the will of said Thomas O. H. Carpenter died intestate after the death of her father and in the lifetime of said Henrietta, leaving one son, to wit, Zelotes W. Holden, one of the plaintiffs, who is her only heir at law.

In view of these facts, the plaintiffs' contention is that the said Henrietta having deceased leaving no child or descendant to take and hold the real estate devised to her, the title thereto has vested absolutely in them by descent from Thomas O. H. Carpenter, Jr., and Fanny H. Holden, both deceased, as a gift over by way of executory devise ; that it is evident from the language used in said will that the testator intended that the limitation over to his son Thomas and to his daughter Fanny should take effect, in case of said Henrietta's death without leaving any child or children or descendants to take and hold said real estate *at a definite time, to wit, on the death of his daughter Henrietta,* thus making the devise executory. The defendant's contention on the other hand is that under the said fourth clause of the will of Thomas O. H. Carpenter, his daughter Henrietta (afterwards Mrs. Wells) took a vested estate tail, and that this being so her husband is entitled to curtesy in this estate. And further, that even if the gift over be construed to be an executory devise, the result will be the same.

An estate tail is an estate of inheritance, deriving its existence from the statute *de donis,* which instead of descending to heirs generally goes to the heirs of the donee's body, which means his lawful issue in a direct line, and upon the extinction of such issue the estate determines ; while an executory devise, as defined by Mr. Fearne, is "such a limitation of a future estate or interest in lands as the law admits in the case of a will, though contrary to the rules of limitation in conveyances at common law." In other words, it is such a disposition of lands by will that no estate vests at the

death of the devisor, but only on the happening of some contingency. See 4 Kent's Comment. 12th ed. 264 ; Tiedeman on Real Property, § 530, and cases in note 1. We think it is clear in view of this distinction between the two estates that an estate tail and not an executory devise was created by said fourth clause of the will.

It is very evident that the testator did not intend that the gift over should take effect until failure of the whole line of Matilda's descendants. The phrase, "lineal heirs of her body," as well as the subsequent phrase, " But in case that the said Henrietta Matilda shall die leaving no child or children or descendants," shows that not only her children, but all of her lineal descendants were intended to be included. *Torrance* v. *Torrance*, 4 Md. 11, 25 ; *Barstow* v. *Goodwin*, 2 Bradf. 413. In the absence of language making a different intent apparent, the rule is that words of limitation on failure of issue, should be construed to mean indefinite failure and not a failure at the first taker's death. See cases collected in 3 Jarman on Wills, 5th Am. ed. by Randolph & Talcott, 297, note 1, and p. 325, note 10 ; *Pearce* v. *Rickard*, *ante*, p. 142. This being so, the case falls within the rule that where a testator devises land to a person and his heirs, and if he shall die without heirs of his body, then over to another, such devise vests an estate tail in the first devisee. 3 Jarman on Wills, 5th Am. ed. 94–98, and cases cited.

In the recent case of *Bailey* v. *Hawkins*, *ante*, p. 573, this court recognized the " well settled principle that a devise in fee will be restricted, and a devise for life enlarged to an estate tail, by a gift over in case the devisee dies without issue, unless there is something in the context to justify a different construction." See also *Arnold* v. *Brown*, 7 R. I. 188 ; *Jillson* v. *Wilcox*, *ib.* 515 ; *Whitford* v. *Armstrong*, 9 R. I. 394 ; *Sutton* v. *Miles*, 10 R. I. 348 ; *Brownell* v. *Brownell*, *ib.* 519 ; *Richardson* v. *Richardson*, 80 Me. 585 ; *Malcom* v. *Malcom*, 3 Cush. 472 ; *Simpson* v. *Simpson*, 4 Bing. N. C. 333 ; *Doe* v. *Davies*, 4 B. & Ad. 43 ; *Morgan* v. *Morgan*, L. R. 10 Eq. 99. " The principle has now become a settled rule of property, in relation to lands," said Sergeant, J., in

*Eichhelberger* v. *Barnitz*, 9 Watts, 447, 450, "that if a devise be made to one in fee, and if he die without issue, or on failure of issue, or for want of issue, or without leaving issue, then over to another in fee, the estate of the first taker is a fee tail, which, if he have issue, passes to them *ad infinitum* by descent as tenants in tail. The estate vests in the first taker fully, and to all intents and purposes as a fee tail, and any devise over after the failure of such, must of course be after an indefinite failure of issue, and bad as an executory devise. It is good as a vested remainder, subject to be barred by a fine or recovery, or deed executed by the tenant in tail, under the act of assembly." In short, it is well settled that a devise in fee, like the one now before us, with a limitation over upon the death of the first taker leaving no lineal heirs of her body—no child or children or descendants, —reduces the estate in fee to an estate tail. If the limitation over is to take effect, not on an indefinite failure of issue of the prior taker, but on a specified definite failure thereof, then the limitation over will not create an estate tail in the first taker. As, for example, had the testator in the will now before us provided that "*at the death* of Matilda leaving no issue, said estate shall then go to my said other children," it would have vested a fee in her with an executory devise over. Thus, in *Swinburne, Petitioner*, 16 R. I. 208, cited by plaintiffs' counsel, where the language was "Should either of my above named children die leaving no legal heirs born of their own body, then I give their shares, after their death, to my then living heirs," &c., it was held that the words, "*after their death to my then living heirs*," obviously meant immediately after their death, said words being intended to fix definitely the time at which the bequest over was to take effect. It was held, therefore, that the bequest over was an executory bequest.

"The principal distinction," said Shaw, C. J., in *Parker* v. *Parker*, 5 Met. 134, 139, "and it is a very important one, between an estate tail, with remainder, and an estate in fee, with a limitation over upon the happening of some event, as an executory devise, is, that a party holding the latter—an

estate in fee determinable upon a contingency—has no power
to defeat the executory devise. He has himself an estate
defeasible upon the happening of the contingency ; he may
alienate it, but his alienee will take it subject to the same
condition. But the owner of an estate tail may, at his pleas-
ure, bar the entail and defeat and cut off all the remainders,
by a common recovery, or, under our statute, by a simple
deed." See also *Allen* v. *Trustees of Ashley School Fund,*
102 Mass. 262.

If it be suggested that a devise over after an indefinite
failure of issue of the first taker is void under the rule
against perpetuities, it is sufficient to reply that as the right
exists to bar the entail at common law by suffering a common
recovery, or by a deed executed and acknowledged in the
manner prescribed by Pub. Stat. R. I. cap. 172, § 3, or by
will as provided in the same section, if an estate remained in
the devisee on which a will could operate, (*Bailey* v. *Hawkins,
supra,*) the restriction on alienation is determinable at the
option of the tenant in tail, and hence the devise is not ob-
noxious to said rule. *De Wolf* v. *Middleton, infra.*

But the plaintiffs' counsel contend that when this will was
before the court on a former occasion, (*Wells* v. *Fairbanks,*
6 R. I. 474,) a gift over was sustained under another clause
of the will in which language is used similar to that in the
clause now before us, where Christopher S. Carpenter, one of
the devisees therein named, had had one child, but died
leaving no child or descendants. As we understand this con-
tention, it is that as the court held in that case that, upon
the death of the testator's son Christopher leaving no children
or descendants, his share passed immediately to his sister
Henrietta under the fifth and sixth clauses of said will, we
ought now to hold that, said Henrietta having since deceased
leaving no descendants, her share thereupon vested absolutely
in the plaintiffs. A comparison of the language used in the
fifth and sixth clauses of the will with that used in the clause
now before us, however, shows a very material difference. In
the former, the testator after making a devise to his two
sons, William and Christopher, for their lives to hold not

jointly, but equally between them, so that they were to hold several estates, added a proviso, " that in case either of my sons shall die leaving no child or children or their descendants to take and hold as lawful heirs the portion of said estate herein given to *such deceased son*, then to go to the children of the other, &c., if any there be." It is also provided, " That in case of the failure of said estate vesting in the legal descendants of the said William and Christopher in manner as aforesaid, then and in that case, I give and devise said real estate to my said daughter Henrietta, as follows : to take and to hold one half of said estate *upon the death* of the first of my said sons, and the other half *upon the death* of the other of my said sons." It was therefore held, and very properly, that the estate of each, if it passed at all to the daughter, was to pass upon the death of such son ; the share of each upon the death of each. That " the state of things upon which the estate of either son passed, was, in the contemplation of the testator, to exist *at the death* of such son." In the clause now before us, however, no such contingency is specified, nor are there any expressions added to the words importing a failure of issue which show that the testator intended to restrict the meaning thereof.

As the defendant's wife took an estate tail, then, in the real estate described in the plaintiffs' declaration, such an estate being one of inheritance, curtesy is clearly one of the incidents thereof. And it is well settled in respect to estates tail that though the issue in tail fail by the death of the child or children in the lifetime of the wife, whereby her estate at her death is at an end, yet the husband takes curtesy, the same being a right incident to such an estate. See 1 Washburn on Real Property, 5th ed. 175 ; Tiedeman on Real Property, § 104, and cases cited ; 1 Greenleaf's Cruise on Real Property, * 140 ; 4 Kent's Comment. * 32–33.

The case is remitted to the Common Pleas Division with direction to enter judgment for the defendant.

*Stephen A. Cooke, Louis L. Angell & Charles E. Salisbury* for plaintiffs.

*James Tillinghast,* for defendant.